KRIVANEK *v*. STATE OF INDIANA.

[No. 767S47. Filed May 19, 1969. No petition for rehearing filed.]

*Sam Mirkin,* South Bend, for appellant.

*John J. Dillon,* Attorney General, *Murray West,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was during the September Term, 1966, of the St. Joseph Circuit Court, charged by indictment filed therein with the crime of Murder in the First Degree. Such indictment was filed September 15, 1966, a warrant for the arrest of appellant on such charge was ordered issued to the Sheriff of that county. On the same day appellant, in the custody of the Sheriff appeared in open court, with counsel, and requested that arraignment on the charge be continued until September 16, 1966; the request for the continuance was granted.

On September 16, 1966, appellant, with counsel, appeared and, before arraignment, filed a Motion to Quash the Indictment.

The indictment herein, omitting formal parts and names of witnesses, reads as follows:

| STATE OF INDIANA | INDICTMENT FOR |
|---|---|
| vs. | MURDER IN THE |
| RICHARD ARTHUR KRIVANEK | FIRST DEGREE |

The Grand Jurors of the St. Joseph County Circuit Court for the September Term, 1966, A.D., in and for the County of St. Joseph, State of Indiana, upon their oath do present:

That on or about the 20th day of August, 1966, at and in the County of St. Joseph, State of Indiana, one RICHARD ARTHUR KRIVANEK, purposely and with premeditated malice, did kill a human being, to-wit: JANET JOAN KRIVANEK, who was then and there at 607 North Michigan Street, in the City of South Bend, County and State aforesaid, he, the said RICHARD ARTHUR KRIVANEK, then and there purposely and with premediated malice, striking at and against the person and body of the said JANET JOAN KRIVANEK with a certain knife then and there had and held in his hands, then and there and thereby inflicting upon the person and body of said JANET JOAN KRIVANEK a mortal wound, and that as a proximate result of said wound, the said JANET JOAN KRIVANEK did then and there die, contrary to the form of Statute in such cases made and provided and against the peace and dignity of the State of Indiana.

/s/ THOMAS J. ROEMER
Thomas J. Roemer
Prosecuting Attorney

Warrant ordered issued.

/s/ JOSEPH W. NYIKOS
JUDGE, ST. JOSEPH
CIRCUIT COURT"

The Motion to Quash, omitting heading and signature, in pertinent part reads as follows:

"Comes now the Accused, Richard Arthur Krivanek, and moves the Court to quash the Indictment herein on the following grounds:

1. The facts stated in said Indictment do not constitute a public offense.

2. Said Indictment does not state the offense charged with sufficient certainty."

The above motion was submitted without argument on September 16, 1966, was at once overruled and appellant, at his request, was formally arraigned, following which he entered a plea of "Not guilty" and then filed an affidavit for a change of venue from the judge.

The ruling on the affidavit for change of venue from the judge reads as follows:

"And now defendant's affidavit for change of venue from the Judge being found sufficient, the Court grants the same.

The Court is now informed that the attorneys cannot agree on a special Judge to try this cause.

The Court now nominates the Hon. E. Spencer Walton, Hon. Norman Kopec as a panel from which the parties may strike.

And now the defendant strikes the name of Judge Kopec.

And now the State of Indiana strikes the name of Judge Dempsey, leaving Judge Walton, who is now by the Court appointed Special Judge to try this case.

And now by agreement, this cause is ordered transferred to the St. Joseph Superior Court, Hon. E. Spencer Walton presiding.

And now defendant is remanded into the custody of the Sheriff.

The above and foregoing record in Cause No. Cr. 14363, State of Indiana vs. Richard Arthur Krivanek, was submitted to the presiding Judge, the Hon. Joseph W. Nyikos, upon arraignment of said Defendant, and said Judge having read the same now certifies it as a true and complete record of the proceedings had in this cause on this date. The Court now orders the same made a part of the record

in this cause and orders it made a part of the order book entry by the Clerk.

Dated this 16th day of September, A.D. 1966.

JOSEPH W. NYIKOS
Judge, St. Joseph Circuit Court"

Thereafter, the cause was tried by a jury which found appellant guilty of murder in the first degree. The verdict of the jury reads as follows, to-wit:

"We, the Jury, find the defendant, Richard Arthur Krivanek, Guilty as charged in the indictment of the crime of Murder in the First Degree. We further find that his true age is 33 years.

The verdict was signed by

ROBERT W. TOWNER
Foreman."

On the 16th day of February, 1967, at the conclusion of presentation of the State's evidence and after the State rested appellant filed a motion for a directed verdict. The record, transcript p. 74, reads as follows:

"And now the defendant files motion for a directed verdict as to Murder in the First Degree, which motion reads in the words and figures following, to wit: (HI)

And now outside of the presence of the jury, hearing is had on defendant's motion for a directed verdict.

And now the Court overrules said motion.

The court set February 27, 1967, for disposition on the pre-sentence investigation. On that date after consideration of such report the court imposed sentence on appellant. Such judgment in pertinent part reads as follows:

"And now the Court upon finding the true age of the defendant to be 33 years of age and pursuant to the verdict of the jury, finds the defendant Guilty as charged of Murder in the First Degree and sentences the defendant to the custody and control of the warden of the Indiana State Prison for the rest of his natural life.

IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED that pursuant to the Verdict of the Jury, that the defendant, Richard Arthur Krivanek, be and hereby is Guilty as charged of Murder in the First Degree, and that he be and hereby is sentenced to the custody and control of the Warden of the Indiana State Prison for the rest of his natural life.

And now the Court orders the Sheriff to carry out the sentence of this Court."

On March 21, 1967, appellant filed his motion for a new trial, which motion, omitting formal parts, reads as follows, to-wit:

"Comes now the Defendant in the above-entitled cause of action, Richard Arthur Krivanek, and moves the Court to set aside the verdict and judgment thereon and grant a new trial of this action for each of the following reasons:

1. The Jury's verdict is contrary to law.

2. The Jury's verdict is not sustained by the evidence and is contrary to the weight of evidence.

3. The Court erred in denying the Defendant's Motion to have the charge of: Murder in The First Degree withdrawn from the Jury's consideration, made by said Defendant at the conclusion of the State's case.

4. Misconduct of the Jury, in this: Certain extraneous matters and improper evidence were received; interjected into; and considered by the Jury during the course of its deliberations to the prejudice of the Defendant, Richard Arthur Krivanek, all as is made clear by affidavits attached hereto and made a part hereof, and of which Juror misconduct this Defendant, as well as both of his counsel, were completely unaware until after the rendition of the verdict in this cause. Specifically, said prejudicial misconduct of the Jury consisted of:

a) The following statement repeatedly made by Juror, Paul Auman, to Juror, Jane Zimmer, as well as to certain of his other fellow-Jurors, during the course of their deliberations, to-wit: 'Would you want a guy like that out in a year and a half? Why, he's been in jail six months now and they'll subtract that from the two years he would get. He could get out in a year and a half.'

b) This remark—repeatedly made by Juror, Fred Bock,

to Juror, Jane Zimmer, and other of his fellow-Jurors, during the course of their deliberations, to-wit: 'Would you want a guy like that out in a year and a half? Why, he's been in jail six months now and they'll subtract that from the two years he would get. He could get out in a year and a half.'

c) The argument—repeatedly resorted to by Juror, Frank Soos, in his efforts to sway Juror, Jane Zimmer, as well as certain of his other fellow-jurors, to-wit: 'Would you want a guy like that out in a year and half? Why he's been in jail six months now and they'll subtract that from the two years he would get. He could get out in a year and a half.'

A Juror is—under his oath—duty bound to predicate his verdict solely upon the law and the evidence in the case—and upon absolutely nothing else. When he bases his verdict upon something besides the law and the evidence or persuades his fellow-jurors to do so, he flagrantly violates his solemn oath as a Juror and is guilty, indeed, of misconduct.

d) The remark by the foreman of the Jury, Robert Towner, to Juror, Jane Zimmer and other of his fellow-jurors, during the course of their deliberations, to-wit: 'Listen, we're too intelligent to go in there as a hung jury.'

e) The promise made by the foreman of the Jury, Robert Towner, to Juror Jane Zimmer and other of his fellow-jurors, during the course of their deliberations, to reveal to them certain vital information concerning the family of the Accused, when he assured them: 'As soon as we come to a verdict, I'll tell you something else about that family (or sister).'

f) The extraneous, extremely prejudicial and highly improper information—information totally inadmissible in evidence—which the foreman of the Jury, Robert Towner, revealed to Juror Jane Zimmer and other of his fellow-jurors, during the course of their deliberations, to-wit: 'His sister was involved in a shooting several years ago and someone was shot (or killed).'

The aforementioned remarks made by the foreman of the Jury, Robert Towner, interjected into the Jury's deliberations certain extraneous and highly prejudicial matters which were clearly not admissible in evidence. His knowledge of this information and its subsequent revelation by him, to his fellow-jurors, unequivocally and unquestionably

precluded him from serving as an impartial juror in said cause and—beyond all doubt—deprived the Defendant, Richard Arthur Krivanek, of his constitutional right to a trial by an impartial jury comprised of twelve qualified jurors—a right guaranteed him by the Sixth Amendment to the Constitution of the United States as well as by Article I, Section 13 of the Constitution of the State of Indiana.

g) The remark made by Juror, Mary Lou Spear, to Juror, Jane Zimmer and other of her fellow-jurors before the Jury returned its verdict in open Court, to-wit: 'You just watch him, he'll show his temper when he hears the verdict.'

These instances of juror misconduct were highly prejudicial to the Defendant, Richard Arthur Krivanek, and effectively deprived him of his constitutional right to a trial by an impartial jury comprised of twelve qualified jurors—a right guaranteed him by the Sixth Amendment to the Constitution of the United States as well as by Article I, Section 13 of the Constitution of the State of Indiana.

In compliance with the new rule which became effective on March 1, 1967, said Defendant, Richard Arthur Krivanek, has hereto, attached and made a part hereof, his Memorandum In Support of His Motion For a New Trial.

WHEREFORE, the Defendant, Richard Arthur Krivanek, prays the Court to set aside the verdict and judgment thereon and grant a new trial of this cause.

/s/ Theodore E. Prekowitz
/s/ Sam Mirkin
Attorneys for Defendant.

(T. 92-95)

With the motion appellant also filed on March 21, 1967, an affidavit by juror Jane Zimmer, omitting formal parts, reads as follows:

(AFFIDAVIT OF JANE ZIMMER)

'JANE ZIMMER, being first duly sworn upon her oath, deposes and says:

That she was a Juror in the case entitled: State of Indiana v. Richard Arthur Krivanek; bearing Criminal Cause No. 14363; and tried as a Jury case in the St. Joseph Superior Court of St. Joseph County, Indiana; said trial commencing on February 8, 1967, and concluding—with

a verdict finding the Defendant: 'Guilty' of 'Murder in The First Degree'—on February 20, 1967.

Affiant further states that she—together with her eleven (11) fellow-jurors—began their deliberations at about 1:00 p.m. on Monday, February 20, 1967, and concluded their said deliberations at approximately 10:40 p.m. on the same day with the aforementioned verdict.

Affiant further states that—while she and her fellow-jurors were engaged in their deliberations—she was, at divergent times, approached by the following named jurors, namely: Paul Auman, Fred Bock and Frank Soos and, by each of them repeatedly informed: 'Would you want a guy like that out in a year and a half? Why, he's been in jail six months now and they'll subtract that from two years he would get. He could get out in a year and a half.'

Affiant further states that—while she and her fellow-jurors were engaged in their deliberations and, at a point at which said affiant was the sole hold-out, said affiant informed her fellow-jurors as follows, 'As far as I'm concerned, this is a hung jury.' At this point the foreman of said jury, Robert Towner, told the affiant: 'Listen, we're too intelligent to go in there as a Hung Jury.'

Affiant further states that, while she and her fellow-jurors were engaged in their deliberations and while said affiant was the sole hold-out, the foreman of said jury, Robert Towner, said to her: 'As soon as we come to a verdict, I'll tell you something else about that family or (sister).'

Affiant further states that she, subsequently agreed to the verdict and, thereupon, the foreman of said jury, Robert Towner, said to this affiant, as well as to the other jurors in the immediate vicinity, 'His sister was involved in a shooting several years ago and someone was shot or (killed).'

Affiant further states that—after she and her fellow-jurors had arrived at a verdict, but before the same was returned in open Court, one of her fellow-jurors, namely: Mary Lou Spear, said to this affiant: 'You just watch him, he'll show his temper when he hears the verdict.'

Further affiant saith not.

Dated at South Bend, Indiana, this 15th day of March, 1967.

/s/ JANE ZIMMER

Subscribed and sworn to before me, a Notary Public in and for said County and State, this 15th day of March, 1967.

/s/ THEODORE E. PREKOWITZ
Notary Public

My Commission Expires:
April 25, 1970.'

(T. 96-97)

With the motion appellant also filed his own affidavit on March 21, 1967, omitting formal parts, reads as follows:

(AFFIDAVIT OF APPELLANT)

'RICHARD ARTHUR KRIVANEK, being first duly sworn upon his oath, deposes and says:

That he is the defendant in the criminal cause of action entitled: 'State of Indiana v. Richard Arthur Krivanek'; bearing Cause No. 14363; tried by a Jury in the St. Joseph Superior Court of St. Joseph County, Indiana; in which he was—on February 20, 1967,—found 'Guilty' of: Murder In The First Degree, by said Jury.

Affiant further states that he has read the Affidavit executed by one JANE ZIMMER, one of the jurors who served in his said trial, and that he does not personally know her or any of the jurors who comprised the Jury serving in his said case.

Affiant further states that he was totally and completely unaware of any of the Jury misconduct attested to by said JANE ZIMMER until several days after the rendition of the verdict in said cause; that he was first made aware of the same by his attorneys, THEODORE E. PREKOWITZ and SAM MIRKIN during the late afternoon of Wednesday, February 22, 1967, at the St. Joseph County Jail in South Bend, Indiana, where he was then being held in custody; that—at said time and place—his said attorneys informed him of a meeting they had just concluded with said JANE ZIMMER and related to him the information she had given them—the information which she subsequently attested to in the Affidavit which she executed on March 15, 1967.

Affiant further states that this Jury Misconduct was highly prejudicial to him and effectively deprived him of a trial by an impartial jury of twelve qualified jurors—a

right to which he is, by law, entitled and which he—at no time—waived.

Further Affiant saith not.

IN WITNESS WHEREOF, affiant has hereunto set his hand this 20th day of March, 1967.

/s/ RICHARD ARTHUR KRIVANEK

Subscribed and sworn to before me, a Notary Public in and for said County and State, this 20th day of March, 1967.

/s/ A. L. KING
Notary Public

My Commission Expires:
August 21, 1968'

(T. 98-99)

With the motion appellant also filed on March 21, 1967, an affidavit by attorney Theodore E. Prekowitz, omitting formal parts, reads as follows:

(AFFIDAVIT OF THEODORE E. PREKOWITZ)

'THEODORE E. PREKOWITZ, being first duly sworn upon his oath, deposes and says:

1. That he is one of the attorneys of record for and on behalf of the Defendant, Richard Arthur Krivanek, respecting the jury trial just concluded in the criminal cause of action entitled: 'State of Indiana v. Richard Arthur Krivanek'; bearing Cause No. 14363; and tried in the St. Joseph Superior Court of St. Joseph County, Indiana.

2. Affiant further states that said trial concluded at 11:15 p.m. on Monday, February 20, 1967, and that—at 11:00 a.m. on Wednesday, February 22, 1967,—he received a phone call at his office from one, JANE ZIMMER, a member of the Jury in the aforementioned case, who sounded very upset over the phone, and told Affiant that she had not slept since the verdict in question was rendered; was extremely upset over certain remarks made, during their deliberations, by certain of her fellow-jurors; and requested to see the Affiant in order to discuss these happenings with him. Affiant arranged an appointment with said juror, at his office for 12:30 p.m. on said date. Said Juror informed Affiant that she would be there.

3. Affiant further states that—following the conclusion

of the aforementioned telephone conversation—he notified his co-counsel of record, SAM MIRKIN, of said development and requested said SAM MIRKIN to be present at the 12:30 p.m. meeting with MRS. ZIMMER. Affiant further states that he then called MR. WILLIAM VOOR, JR., the Prosecuting Attorney of St. Joseph County as well as the HON. E. SPENCER WALTON, the presiding judge at said trial and informed them of the matter. MR. VOOR informed the Affiant that—as the Prosecutor at the trial in questions—he deemed it best that he, in no way, become involved. JUDGE WALTON, not only agreed that said Affiant had a right to go into the matter with MRS. ZIMMER, but, further, told said Affiant that it was Affiant's duty to his client to do so.

Thereupon, at 12:30 p.m. on Wednesday, February 22, 1967, at his law office in the Odd Fellows Building in South Bend, Indiana, said Affiant—together with his co-counsel, SAM MIRKIN—met with said juror, JANE ZIMMER.

Affiant further states that—at said meeting—said juror, JANE ZIMMER, told both MR. MIRKIN and your Affiant that—while she and her fellow-jurors were engaged in their deliberations—she was, at divergent times, approached by the following named jurors, namely: PAUL AUMAN, FRED BOCK and FRANK SOOS and, by each of them, repeatedly informed as follows: 'Would you want a guy like that out in a year and a half? Why he's been in jail six months now and they'll subtract that from the two years he would get. He could be out in a year and a half.' Said juror, JANE ZIMMER, then continued as follows: that while said jurors were still engaged in their deliberations and at a point at which she was the only hold-out, she told her fellow-jurors: 'As far as I'm concerned, this is a hung jury.' At this point she was addressed by ROBERT TOWNER, foreman of said jury, and told: 'Listen, we're too intelligent to go in there as a hung jury.' Said JANE ZIMMER then said that shortly after this and while she was still the sole hold-out, said ROBERT TOWNER, foreman of said jury then said to her: 'As soon as we come to a verdict, I'll tell you something else about that family (or sister).' It was shortly thereafter that said JANE ZIMMER agreed to the verdict and was then told by said ROBERT TOWNER, foreman of said jury, that: 'His sister was involved in a shooting several years ago and someone was shot (or killed).'

Said JAME ZIMMER then went on to inform Mr. MIR-

KIN and this affiant that—after she and her fellow-jurors had reached a verdict, but before the same was returned in open court, one of her fellow-jurors, namely: MARY LOU SPEAR, said to her: 'You just watch him, he'll show his temper when he hears the verdict.'

Affiant further states that, subsequently, on March 15, 1967, he—in the presence of said SAM MIRKIN—obtained from said JANE ZIMMER an affidavit setting forth matters herein mentioned by your affiant.

Affiant further states that he was completely unaware of any of the aforementioned Jury Misconduct until first apprised thereof by said JANE ZIMMER on February 22, 1967.

Further Affiant saith not.

IN WITNESS WHEREOF, affiant has hereunto set his hand this 15th day of March, 1967.

/s/ THEODORE E. PREKOWITZ

Subscribed and sworn to before me, a Notary Public in and for said County and State, this 15th day of March, 1967.

/s/ SAM MIRKIN
Notary Public

My Commission Expires:
June 14, 1969.'

(T. 100-103)

Within the proper period of time, the appellant filed an addendum to motion for a new trial, which addendum, omitting formal parts, reads as follows:

(ADDENDUM TO MOTION FOR NEW TRIAL)

'Comes now the Defendant in the above-entitled cause of action, Richard Arthur Krivanek, and moves the Court to incorporate this Addendum into his, Motion for a New Trial, heretofore filed, and make said Addendum a part of said Motion.

Difficulties encountered in obtaining and re-producing the material herein contained precluded Defendant from filing same together with his Motion For A New Trial.

/s/ THEODORE E. PREKOWITZ
Theodore E. Prekowitz
Attorney for Defendant'

(T. 133)

With the addendum appellant also filed on March 22, 1967, an affidavit by attorney Theodore E. Prekowitz, omitting formal parts, reads as follows:

(AFFIDAVIT OF THEODORE E. PREKOWITZ)

'THEODORE E. PREKOWITZ, being first duly sworn upon his oath deposes and says:

1. That he is one of the attorneys of record for and on behalf of the Defendant, Richard Arthur Krivanek, respecting the jury trial just concluded in the criminal cause of action entitled: *'State of Indiana v. Richard Arthur Krivanek'*; bearing Cause No. 14363; and tried in the St. Joseph Superior Court of St. Joseph County, Indiana.

2. Affiant further states that the extraneous and inherently prejudicial matter to which the foreman of the Jury, Robert Towner, referred and which he interjected into the deliberations of the Jury in the aforementioned case, concerns the shooting and killing of a member of a teenage gang which included three sisters of the Defendant and which slaying occurred on July 21, 1948, and is best described by the newspaper report of the same which appeared on the front page of the South Bend Tribune in its afternoon edition of Thursday, July 22, 1948, and is, herewith, from microfilm reproduced and attached hereto and made a part hereof.

3. Affiant further states that the Gloria Potter, Edith Krivanek and Ruth Ann are all sisters of the Defendant, Richard Arthur Krivanek, and the David Sigrist mentioned therein, subsequently became a brother-in-law of the Defendant. That said newspaper story carried a picture of the aforementioned four teenagers—which picture does not clearly reproduce in the reproduction of the story—and that two of the aforementioned four teenagers, namely: Edith (Krivanek) Coleman and David Sigrist were witnesses in the Defendant's aforementioned trial.

4. Affiant further states that he had no knowledge whatsoever regarding this matter until he investigated the same after having been thereof informed by Jane Zimmer, a member of the Jury, on February 22, 1967.

Further affiant saith not.

IN WITNESS WHEREOF, affiant has hereunto set his hand this 22nd day of March, 1967.

/s/ THEODORE E. PREKOWITZ

Subscribed and sworn to before me, a Notary Public in and for said County and State, this 22nd day of March, 1967.

/s/  SEYMOUR  WEISBERGER
Notary Public

My Commission Expires:
January 30, 1971'

(T. 134-135)"

On May 11, 1967, the court overruled appellant's motion for a new trial.

Appellant's Assignment of Errors is the single specification:

"1. The Court erred in overruling appellant's motion for a new trial on May 11, 1967."

Grounds 2 and 3 of appellant's motion for a new trial are not before the court in this appeal for two reasons. First, appellant makes no attempt to illustrate how the evidence was insufficient or in what manner the jury's verdict was contrary to the weight of the evidence. Appellant neglected to set out in the brief any of the evidence adduced at the trial. Second, appellant did not argue either ground 2 or 3. It is a long standing rule that, on appeal, it is incumbent upon the appellant to affirmatively show harmful error by both argument and citation of authorities, and failure to do so results in waiver of the alleged errors; *Wright v. State* (1958), 237 Ind. 593, 147 N. E. 2d 551.

It is apparent appellant on appeal is relying on ground No. 4 of his motion for new trial, and the affidavits, including his own, attached thereto. We have, in view of the seriousness of the charge of which appellant was convicted, the fact that he received a life sentence and the reliance appellant places on said ground, set out in toto his motion for new trial and the memorandum in support thereof as well as the exhibits attached thereto.

The crux of appellant's argument is that the interjection of extraneous and improper evidence by jury foreman Towner during the course of the jury's deliberations was highly prejudicial to appellant, and should have resulted in the sustaining of appellant's motion for a new trial.

With this we cannot agree. The revelation as to the alleged jury misconduct is the product of an affidavit by a juror in which the juror attempts to impeach the verdict that she reached. However, it is well settled law that affidavits by jurors may not be received for the purpose of impeaching their verdict. *Widup v. State* (1967), 250 Ind. 1, 230 N. E. 2d 767; *Groover v. State* (1959), 239 Ind. 271, 156 N. E. 2d 307; *White v. State* (1955), 234 Ind. 193, 125 N. E. 2d 442.

Even without the long established rule that a juror's affidavit will not be received to impeach his verdict, the affidavit in question is not sufficient to establish the jury misconduct and resulting prejudice of which the appellant complains. In order for the extraneous evidence interjected by juror Towner to have prejudiced the jury, it must appear that the evidence was interjected into the deliberations prior to the time the entire jury reached a verdict. It is obvious that if the information was divulged after the jury had reached its verdict, and not while the jury was deliberating, it could not have effected the verdict since the jury would not have known of the information prior to arriving at its verdict. From juror Zimmer's affidavit it is clear that she was the last juror to arrive at the verdict. It is also apparent from juror Zimmer's affidavit that the questionable information was not divulged until after she arrived at her verdict. Therefore, since she reached a verdict before hearing the information, the information could not have had any influence on the verdict she reached. Neither could the information have influenced the other jurors since it is clear that they, too, had arrived at their verdict prior to hearing the information.

Appellant cites *Hutchins v. State* (1894), 140 Ind. 78, 39 N. E. 243, for the proposition that the affidavit of a juror may be considered by the court in determining whether the accused was given a fair trial. However, the conduct complained of in *Hutchins* was that the jury foreman prevented free and open discussion by the jury of the merits of the case. Here there was no such stifling of debate, but, based on the affidavit, a vigorous exchange of opinions.

Finally, appellant fails to show how juror Towner's information colored the verdict that he reached. The event of which juror Towner had knowledge did not involve appellant, but appellant's sister, and occurred approximately twenty years prior to trial. As was mentioned above, the affidavit clearly establishes that none of the other jurors knew of the information prior to reaching their verdicts, and thus it could not have influenced their verdicts. Further, there is absolutely no evidence whatsoever that juror Towner's knowledge in any way affected his verdict. On the contrary, there is juror Towner's statement during voir dire that he would attempt to be a fair and impartial juror in the case.

Thus, we cannot say that appellant has presented us with such a case of jury misconduct as to deprive him of a fair and impartial trial by his peers. As was stated above, the law is clear and well established that a juror's affidavit cannot be used to impeach the jury's verdict, and appellant has failed to persuade us that the rule should not be applied to the present case.

We postponed discussion of ground 1 of appellant's motion for a new trial until we had considered all of the allegations of ground 4 of such motion. Our reason for doing so was to eliminate the possibility that some one of the grounds set out at ground 4 would lend support to ground 1. Having thoroughly considered the motion for new trial we now find that ground 1 thereof presents no question on appeal.

Accordingly, the judgment of the trial court is affirmed.

DeBruler, C. J., and Hunter and Givan, JJ., concur; Arterburn, J., concurs in result.

NOTE.—Reported in 247 N. E. 2d 505.